IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | | |
|---|---|---|
| JOSH BUTTERFLY, | ) | Cause No. CV 05-53-H-DWM-RKS |
| Plaintiff, | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| BILL SLAUGHTER, et al., | ) | |
| Defendants. | ) | |

On October 19, 2005, Plaintiff Josh Butterfly moved (doc.1) to proceed in forma pauperis with this action under 42 U.S.C. § 1983.  That motion was granted in a separate order (doc. 6). Mr. Butterfly is a state prisoner proceeding pro se.

After the filing of the original Complaint (doc. 2),  United States Magistrate Judge Carolyn S. Ostby entered an Order on July 26, 2006, explaining several deficiencies in the pleading and giving Butterfly an opportunity to amend to correct them.  *See generally* Order Permitting Plaintiff to File Amended Complaint (doc. 8) at 5-8. Mr. Butterfly filed an Amended Complaint (doc. 9) on August 8, 2006.

**I. Preliminary Screening**

Pursuant to the federal statutes governing proceedings in forma pauperis and proceedings

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

by prisoners, federal courts must engage in a preliminary screening of cases to assess the merits of the claims. 28 U.S.C. §§ 1915(e)(2), 1915A(a); 42 U.S.C. § 1997e(c)(1); *Lopez v. Smith*, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc). The court must liberally construe pro se pleadings. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). The court must identify cognizable claims, or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief can be granted, or if the complaint seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A(b); 42 U.S.C. § 1997e(c)(1).

Although the statute requires a dismissal for the reasons stated, it does not deprive the district court of its discretion to grant or deny leave to amend. *Lopez*, 203 F.3d at 1127. The court can decline to grant leave to amend if "it determines that the pleading could not possibly be cured by the allegation of other facts." *Id*. (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Leave to amend is liberally granted to pro se litigants unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (citing *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)). Thus, the question currently before the Court is whether the Amended Complaint states a claim on which relief may be granted.

**I. Allegations of the Amended Complaint**

The Amended Complaint appears to attempt to set forth claims for retaliation, "deliberate indifference,"[1] discrimination or prejudice against Native Americans, and cruel and unusual

---

[1] "Deliberate indifference" is the phrase used to describe the mental state that a plaintiff must prove a defendant had in order to show a violation of the Eighth Amendment. A defendant's alleged

punishment.

Mr. Butterfly alleges that on May 3, 2005, an instructor at Montana State Prison accused him of being involved when another inmate's computer displayed an inappropriate image. After the incident, Mr. Butterfly was removed from his job. Mr. Butterfly then filed a grievance, at which point he alleges he was subjected to an increase in unpleasant interactions between himself and staff, verbal harassment, increased searches, and threats of disciplinary action. He alleges this was in retaliation for his filing of the initial grievance and subsequent grievances concerning the verbal harassment and threats made against him by corrections staff.

## II. Analysis

### A. Retaliation, Harassment, and Safety

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (internal footnote omitted). An allegation of harm may be sufficient to establish a retaliation claim even if an inmate does not specifically allege that the harm chilled his First Amendment rights. "[H]arm that is more than minimal will almost always have a chilling effect." *Id*. at 567 n.11.; Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).

Mr. Butterfly does not specifically allege that his First Amendment rights were chilled. Mr. Butterfly does allege three different instances of harm. However, with respect to each of

---

deliberate indifference to something does not, by itself, state a claim on which relief may be granted, nor is "deliberate indifference," by itself, a wrongful act.

those instances, either other elements of a retaliation claim are missing, or the allegations do not rise to the level of harm required to show a constitutional violation.

First, Mr. Butterfly points to harassment in the nature of various guards stating, for example, "if you want we can find a nice place for you in Max," "you're going to get it," "we're not done with you," or "just you wait," or guards following him as he moved through the facility or making remarks about past incidents. *See, e.g.*, Am. Compl. at 7, para. 3; *id*. at 8, paras. 1, 5. There is no controlling law holding that such remarks constitute "adverse action." Threats are not actionable, *see Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (per curiam), and these remarks are only questionably threatening. While Mr. Butterfly claims that he sought mental health treatment as a result of severe stress, the remarks of which he complains would not constitute harm to a reasonable person, and there is no reason to believe that the guards knew Mr. Butterfly to be especially susceptible to psychological harm. *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996). A reading of the Amended Complaint as a whole does not reveal anything in the alleged harassment that could reasonably constitute harm, much less conduct that is "horrific" or approximates "torture," *see* Am. Compl. at 12, 13. The Court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

As the second instance of harm, Mr. Butterfly claims that "[s]taff came in to shake the entire block down upsetting other inmates by being extra tough and attributing the 'heat' to Butterfly." Mr. Butterfly says that "[p]hysical conflicts occurred" and other inmates "assaulted

[him] verbally emotionally, physically, and even extorted music CD's and canteen goods" from him. *See* Am. Compl. at 8, para. 2; *id*. at 11, para. 3. Prison guards may violate an inmate's constitutional rights by, for example, telling other inmates that he is a "snitch." *See Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989). However, Mr. Butterfly's Amended Complaint, as a whole, contradicts his allegations of danger. He does not describe any particular incident. No assault or action of any kind by inmates against Mr. Butterfly is alleged in the numerous grievance forms submitted with the Amended Complaint. The Amended Complaint mentions physical assault only after referring to verbal and emotional "assault." The nonspecific reference to physical assault is a make-weight allegation. The Amended Complaint offers no support for an inference that Mr. Butterfly was compelled to endure something more than the usual sort of "physical conflicts" that might be expected in a prison. *See Clegg*, 18 F.3d at 754-55. Mr. Butterfly has not alleged facts showing that the officers' retaliatory actions changed his situation in the eyes of other inmates. This case is not *Valandingham*.

Third, Mr. Butterfly contends that an officer forced him to mow lawns at the prison, even though he had a medical restriction as a result of a bad back. However, Mr. Butterfly alleges no facts supporting an inference that the officer's motivation in assigning Mr. Butterfly to mowing duty was retaliatory – or, in other words, no facts to support an inference that Mr. Butterfly was ordered to mow "because of" his filing of grievances. *Rhodes*, 408 F.3d at 567. Mr. Butterfly's Amended Complaint shows that he was required to mow because he had to perform extra duty as a sanction for a disciplinary violation in March 2005, before any of Mr. Butterfly's current complaints began. *See* Am. Compl. at 7, 28. Therefore, a retaliation claim could arise only from

the choice of mowing, not from the imposition of extra duty itself, because the extra duty plainly served a legitimate correctional goal. The officer who required the mowing listened to what Mr. Butterfly said but concluded that, because he saw Mr. Butterfly engaging in horseplay at the gym, mowing would not be too strenuous. *Id*. at 28-29. Mr. Butterfly's own exhibits show that the officer believed he was "faking," *id*. at 29, not that the officer chose mowing because he knew Mr. Butterfly had a bad back and wanted to punish him for filing grievances. There is no support for an inference that the choice of mowing, rather than some other type of extra duty, was retaliatory.

Nor are there facts to support an inference that Mr. Butterfly's Eighth Amendment right against cruel and unusual punishment was violated by the Defendants' verbal harassment. "[V]erbal harassment generally does not violate the Eighth Amendment." *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996). While Mr. Butterfly points out that he found an eagle feather on the floor of his cell after a search, there is no indication whatsoever that any officer intended to put the eagle feather on the floor or otherwise desecrate or denigrate it. As to the officers' comments about "getting" Mr. Butterfly, "it trivializes the [E]ighth [A]mendment to believe a threat constitutes a constitutional wrong." *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (per curiam). There is no indication that Butterfly was actually imperilled by any officer or inmate, or that one could reasonably believe that he was in such peril.

Mr. Butterfly fails to state a claim for retaliation, harassment, or violation of his right to physical safety. The allegations of his Amended Complaint fail to rise to the level of showing a violation of the Eighth Amendment's protection against cruel and unusual punishment or a

violation of his First Amendment rights.

### B. Racial Discrimination

Prisoners are protected from invidious discrimination based on their race.  *See, e.g., Johnson v. California*, 543 U.S. 499, 509-11 (2005); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Mr. Butterfly's Amended Complaint does not allege facts sufficient to support an inference that he was treated more harshly than other inmates or deprived of opportunities because he is a Native American.  Rather, all of his allegations are aimed at showing that the Defendants had a personal problem with him.  Mr. Butterfly fails to state a claim for racial discrimination.

Based on the foregoing, the Court enters the following:

### RECOMMENDATION

1. Mr. Butterfly's Amended Complaint (doc. 9) should be DISMISSED WITH PREJUDICE for failure to state a claim on which relief may be granted and for frivolousness.

2. The docket should reflect that Mr. Butterfly's filing of this action counts as one strike against him, pursuant to 28 U.S.C. § 1915(g), for failure to state a claim and for frivolousness.

3. Pursuant to Fed. R. App. P. 24(a)(4)(B), the District Court should CERTIFY that any appeal from this disposition would be taken in bad faith.

The Clerk of Court shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the Plaintiff.  Plaintiff is advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed or delivered to prison authorities for mailing within

twenty (20) calendar days[2] after the entry date reflected on the Notice of Electronic Filing, or objection is waived.

   Mr. Butterfly must immediately inform the Court of any change in his mailing address.

DATED this 8th day of May, 2007.

/s/ Keith Strong
Keith Strong
United States Magistrate Judge

---

[2] In prisoner cases, this Court extends the time to object to twenty days in order to take into account the somewhat greater mailing time that is involved in sending documents into and out of a prison facility.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 8